## N. H. MUTUAL FIRE INS. CO. *v.* HUNT.

The consideration set forth in a declaration upon a promise must be substantially proved as laid, or the variance will be fatal.

Where the plaintiffs, a mutual fire insurance company, set forth in their declaration that the defendant, "in consideration that said company had accepted the assignment of a certain policy to the defendants, they then and there promised to pay all assessments," &c., but the contract introduced to sustain the declaration stated that " the policy having been assigned to us, in consideration thereof we hereby promise to pay all assessments," &c., *held*, that there was a variance.

A mutual fire insurance company issued a policy to W., who, having mortgaged the premises to S., assigned the policy to him, with the consent of the directors. Afterwards S. having sold his interest in the premises to H. and E., assigned the policy to them, with the approval of the directors, H. and E. giving their written promise to the company at the time to pay all assessments that should thereafter be made against the policy. Subsequently assessments were made against the policy for losses happening before the assignment to H. and E., and also for losses after the assignment to them. After all the assessments were made, those that were made for losses prior to the assignment to H. and E. were paid by the surety of W., who had signed his premium note with him, and the note was given up to the surety. On an action brought against H. and E. for the assessments for losses after the assignment to them, *held*, that they were liable for their payment, and that the surrender of the original note of W. did not relieve H. and E. from their promise.

A general count upon an account annexed to the writ may be maintained, where the plaintiff has fully performed his part of a contract and there remains only a debt or duty to be paid or performed by the defendant.

ASSUMPSIT, on a contract, of which the following is a copy :

" Policy No. 14586, for $3000 ; premium note $300, dated February 17, 1841, issued by the New Hampshire Mutual Fire Insurance Company, to Noah Wyeth, having been assigned to us, in consideration thereof, we hereby promise to pay said company, or to their treasurer for the time being, all assessments hereafter made against said policy.

ISRAEL HUNT, JR.<br>JESSE ESTEY.

Dated November 3, 1845."

The second count was upon an account annexed to the writ, as follows :

" 1851, September 30.   To amount of assessment of
   1846, for losses from November 3, 1845, to March
   23, 1848, on premium note No. 14586, declared
   March 23, 1846,............................$5,36
Interest on same from June, 1846,................ 1,70
Assessment of 1847, on note No. 14586 to expiration,
   declared March 22, 1847,..................... 21,00
Interest on same from June, 1847,................ 5,46

                                          $33,52"

The writ also contained the other general money counts.

At the trial upon the general issue, it appeared in evidence that on the 31st day of March, 1841, Wyeth, having mortgaged the insured premises to Royal Stimson, assigned to him the policy, with the consent of the directors, and on the 3d of November, 1845, having sold his interest in the premises to Hunt and Estey, Stimson assigned the policy to them, with the consent of the directors.

The policy is dated on the 17th day of February, 1841. On the 29th day of January, 1849, the insurance company brought an action against Hiram Munroe, who was the surety on the premium note, to recover the assessments thereon, " for losses up to the assignment of policy to Israel Hunt and Jesse Estey, November 3, 1845," and the interest, being the sum of $32,46.   On the same day the defendant, Munroe, settled the action by paying the sum of $30, and the premium note was given up.   The present suit was brought on the 14th day of November, 1851, and the defendant contends that the surrender of the premium note operated to discharge the contract declared on, and to relieve him from his liability to pay the assessments made against the policy.

A verdict was taken for the plaintiffs for the amount of

the assessments specified, subject to the opinion of the superior court, upon which judgment was to be rendered, or it was to be set aside and judgment rendered for the defendant, as the opinion of the court might be upon the foregoing case.

The declaration, charter and by-laws were made a part of the case.

*George & Foster*, for the defendant.

I.  The plaintiffs cannot recover in this action, upon the first count in their declaration—

1.  Because there is a fatal variance between the declaration and the written instrument which is offered in support of it.  1 Chit. Pl. 298, 299 ; *Benden* v. *Manning*, 2 N. H. Rep. 290 ; *Bulkley* v. *Landon*, 2 Conn. Rep. 404.

2.  Because the contract therein declared on is invalid, being founded upon a past and executed consideration, not appearing to have been performed at the defendant's request. Parsons on Contracts, 391 ; *Osborne* v. *Rogers*, 1 Saund. 264, n.; *Hayes* v. *Warren*, 2 Strange 933 ; *Pillans* v. *Van Mierop*, 3 Burr. 1671 ; *Livingston* v. *Rogers*, 1 Caines 583 ; *Jewett* v. *Somerset*, 1 Greenl. 128 ; *Lousdale* v. *Brown*, 4 Wash. C. C. 148 ; *Leland* v. *Douglass*, 1 Wend. 491 ; *Comstock* v. *Smith*, 7 Johns. 88 ; *Parker* v. *Crane*, 6 Wend. 647 ; *Weed* v. *Clark*, 4 Sandf. S. Ct. Rep. 31 ; *Chaffer* v. *Thomas*, 7 Cow. 359 ; *Buckley* v. *Landon*, 2 Conn. Rep. 404 ; *S. C.* 3 Conn. Rep. 76 ; *Hatch* v. *Purcell*, 1 Foster's Rep. 549.

And the court cannot say that there is such a benefit appearing (upon the face of the contract) to have been conferred upon the defendant as to raise an implication of a previous request ; agreeably to the principle in *Hatch* v. *Purcell*, before cited.  See, also, *Allen* v. *Woodward*, 2 Foster's Rep. 544 ; *Durnford* v. *Messitu*, 5 Maule & Selwin, 496.

Nor can the plaintiffs show by parol evidence that the defendant actually received a benefit from the assignment ; for that would be to add to and vary the written contract.

Where a writing expresses a consideration on its face, it excludes the inference that there was any other consideration, and no other can be shown. *Knox* v. *Martin*, 8 N. H. Rep. 156; 1 Chit. Pl. 298; *Cutter* v. *Reynolds*, 8 B. Mun. 596; *Schermerhorn* v. *Vanderheiden*, 1 Johns. 140; *Preston* v. *Merceau*, 2 W. Black. 1249; *Clarkson* v. *Hanway*, 2 P. Wms. 204; *Peacock* v. *Monk*, 1 Ves. 128; Gilpin 329; 1 Greenl. Ev. § 277.

II. Nor is the promise of the defendant sufficient to warrant a recovery even if there is a consideration for it, because it was no more than a promise to pay assessments that might thereafter be made upon the premium note therein specified, which premium note has been given up by the company, so that no assessments could be made upon it. See plaintiffs' act of incorporation, §§ 5 and 8, and by-laws of the incorporation, article 13; *Hyde* v. *Lynde*, 4 Coms. 387.

III. Nor can the plaintiffs recover upon the second count, since it is upon an account annexed for assessments upon a premium note, which had been given up and cancelled before the commencement of this suit.

The contract declared on is not a premium note, and no assessment could be made upon it. The original premium note was given up. *Felton* v. *Brooks*, 4 Cush. 203. Assessments can only be made on the original note, and not upon this contract, and so is the practice.

*Rolfe & Marshall*, for the plaintiffs.

I. The first position taken in the defendant's brief is good, so far as the law is concerned, but bad as to the fact. The plaintiffs say that there is no variance. But if the court consider that there is a variance, and the declaration contains the legal effect or spirit of the contract offered in proof, it is not sufficient to prove fatal. For then the declaration " will in general be sufficient, though it may vary from the precise words of the contract" offered to sustain

it. 1 Chit. Pl. 307. " The court leans against the rejection of testimony, for slight variances from the declaration." *Silver* v. *Kendrick*, 2 N. H. Rep. 160, 161.

It is immaterial whether the contract states in so many words that the policy has been assigned " at the defendant's request " or not. The fact is stated that the policy had been assigned, and the signature to the note follows, and the policy and note have their legal effect, to wit; the company pays the defendant the loss, if any is sustained, and the defendant pays the assessments ; and the consideration is the same in this as in all insurance notes, to wit, a guaranty of loss by reason or means of fire.

It is not necessary for the plaintiffs to say that there was any benefit conferred upon the defendant by the assignment, because the benefit, in this case, as in all cases of insurance, is a contingency depending upon an accidental loss by means or reason of fire. The doctrine in *Hatch* v. *Purcell*, cited in the defendant's brief, can have no influence in the decision of this case, there being no analogy between the two cases.

The policy and assignment, in connection with the note and declaration, were proper evidence to go to the jury of the consideration, because the policy and assignment were referred to in the note. No question was raised by the defendant upon trial as to that point, and the case finds the facts all admitted.

II. The second point of the defendant in his brief is, that the promise was to pay assessments that might thereafter be made upon the premium note therein specified, which note had been given up. The case does not so find, but the language of the contract is " to pay all assessments hereafter made against said policy."

III. The second count is good, in that the charge is against the defendant ; and the note declared on is numbered the same as specified in the second count in the plaintiffs' declaration.

IV. If the second count is bad, the third count for money had and received, paid, laid out and expended, &c., is good; because the defendant promised to pay all assessments that might thereafter be made against said policy, and the company had paid the defendant's part of the losses to the insured, and were entitled to receive it back of the defendant.

Eastman, J. The only question that is distinctly presented by this case as drawn is, whether the surrender of the original premium-note, given by Wyeth on the issuing of the policy, and signed by Munroe as his surety, operated to discharge the defendant from his liability to pay the assessments made against the policy. But in the argument of the case, the first position taken by counsel is, that there is a variance between the first count in the declaration and the evidence offered to support it. The declaration, the charter and by-laws having been made a part of the case, this question is, perhaps, properly raised.

The declaration alleges that the defendant, " in consideration that said company had accepted the assignment of a certain policy of insurance, numbered 14,586, for $300, to the defendant, then and there promised," &c.; but the contract states that " the policy having been assigned to us, in consideration thereof we hereby promise," &c. The declaration sets forth the consideration to be the *acceptance* of the assignment of the company, while the evidence shows it to be the assignment itself of the policy by the assured to the defendants.

Here would seem to be a clear variance, and this count in the declaration would, consequently, be defective. The consideration of a promise or undertaking is the foundation of a contract, and a declaration setting forth one consideration as the basis of the promise, cannot be sustained by proving another.

But there are other counts in the plaintiffs' declaration,

and we will examine whether the action can be sustained upon either of them.

The second count was upon an account annexed to the writ, as follows :

"1851, Sept. 30, to amount of assessment of 1846, for losses from Nov. 3, 1845, to March 23, 1846, on premium-note No. 14,586, declared March 23, 1846, ..................................... \$5,36

Interest on same from June, 1846, ................ 1,70

Assessment of 1847, on note No. 14,586, to expiration, declared March 22, 1847, .................. 21,00

Interest on same from June, 1847, ................. 5,46

32,52."

It does not distinctly appear by the case whether the defendant was the assignee of the mortgagee, Stimpson, or whether he had become the purchaser, and had a full title to the property. The case says that Stimpson, having sold his interest in the premises to Hunt & Esty, assigned the policy to them, with the consent of the directors. It is not, perhaps, very material to know how this was, though it might make a difference in the relation in which the defendant stood to the company. If he was owner of the fee, and the policy was assigned, and the assignment approved, with a knowledge of the ownership, the defendant, by his contract, would become a member of the company, and entitled to all the benefits to be derived from the policy. If he held as assignee of the mortgagee simply, then, under the provisions of this charter and by-laws, he would not be a member, and his interest in the policy would not exceed the extent of the debt secured by the mortgage. In either case, had the property been destroyed by fire, the defendant would have had a claim upon the company for the loss. The charter and by-laws provide for an absolute transfer of the policy in case of sale, and for an assignment in

case of mortgage, the policy in the latter case to be held as collateral security. Whether, therefore, he held the policy as owner of the fee or as assignee of the mortgage, the assignment having been approved by the proper officers, and the defendant, having given his security for the payment of all assessments, would, in case of fire, have been clearly entitled to receive either the whole or a part of the insurance. And the surrender of the original premium-note of Wyeth and Munroe, on the payment of the assessments for losses prior to the assignment to the defendant, would not and could not affect the rights of the defendant upon the policy, had the property been destroyed. It was an act to which he was not a party.

This is the position in which the defendant stood as holder of the policy after the same was assigned to him. His claim upon the company would have been good after the assignment, and during the continuance of the policy. Has the claim of the company upon him been lost by the surrender of this original note?

It is to be observed that the undertaking of the defendant was to pay all assessments that might thereafter be made against the *policy*. And this undertaking was upon good consideration—the contemporaneous assignment of the policy, which was then in full life, and the assent thereto by the directors. It was not a promise to pay such assessments as might be made upon the note of Wyeth and Munroe, but such as might be made against the policy. It was a new contract between the plaintiffs and defendant, and not founded upon any past and executed consideration, but upon one then made and existing, the effect of which was to pay the defendant for such losses as might happen to the property while he was legal holder of the policy.

And this promise was in no way inconsistent with the provisions of the charter, for the eighth section provides that, upon loss or damage, the directors shall settle and deter-

mine the sums to be paid by the several members of the company. It is true that the section also provides that the sums to be paid shall be in proportion to the amount of the deposite-note. But the assessment is not made against the note, but against the member. The note regulates the proportion to be paid, and is the ordinary evidence of the promise to pay the assessments, and the directors settle and determine the amount to be paid by the holder of the policy accordingly. And although the practice probably is, as suggested by the defendant's counsel, to characterize the assessments made by mutual insurance companies in this State, as assessments made upon the premium-notes, yet, strictly speaking, it is not so, but the assessments are made upon the members, and the notes fix the ratio by which each member is assessed, and such is the meaning of the provisions of this charter to which we have alluded.

There is nothing, then, in the terms of the promise itself, which the defendant gave to the plaintiffs, that can prevent a legal assessment for losses against this policy, and nothing in those terms that can relieve the defendant from the payment of assessments duly ordered.

Could the surrender of the original premium-note affect this contract? The argument goes upon the ground that, without it, no legal assessment could be made, and hence no recovery can be had upon the promise of the defendant. But is this position sound? Could no assessments be made without this note?

We have seen that the charter provides that in case of loss, the directors shall determine the sum to be paid by the members, in proportion to the amount of the premium-notes, and it further provides that, in case any member shall neglect to pay the sum assessed upon *him*, (not upon the note,) the whole amount may be recovered, &c. Now the promise of the defendant was to pay all the assessments that should thereafter be made against that policy. It was an absolute undertaking, entered into in consequence of the

assignment of the policy to him. This promise contains within itself the number of the policy and the amount of the original premium-note. It, therefore, furnishes all the data necessary to the making of a legal assessment upon the policy ; and as it does not purport to be in any way a conditional undertaking, dependent upon the existence or nonexistence of the original note, we do not discover any valid reason for holding that the surrender of the note of Wyeth worked a discharge of the defendant upon his undertaking.

We might remark further, that if the defendant was owner of the fee, and so by the transfer became a member of the company, it would, perhaps, be a pertinent inquiry whether his promise might not properly enough be treated as a premium-note.

But there is another answer to this position, which would seem to be conclusive upon the defendant. The original premium-note of Wyeth was dated February 1, 1841. The promise of the defendant was made November 3, 1845. The original note was given up to Munroe, the surety, on the 29th of September, 1849, and upon the payment of assessments made for losses up to the time of the assignment of the policy to Hunt and Esty, November 3, 1845. Now the assessments sought to be recovered in this action were made, one on the 23d of March, 1846, for losses from November 3d, 1845, the date of the assignment, up to the day of the making of the assessment; and the other on the 22d of March, 1847, for losses to the expiration of the policy, which was February 17th, 1847. It will be seen, then, that these assessments were actually made while the premium-note was in the possession of the plaintiffs, the last one being made two years and six months before the surrender of the note. And this would seem to remove all objections to the legality of the assessments. They became determined and fixed while the plaintiffs had the note, and the note, no doubt, formed the basis of the assessments. Being thus

legally made, the promise of the defendant comes in by express terms to pay them. His liability was fixed long before the original note was surrendered, and the surrender of that note could in no way change it. He was not a party to that note, and was not liable upon it. It was not his contract.

The plaintiffs, showing assessments legally made and a promise by the defendant, upon a consideration good in law, to pay assessments thus made, make out a complete cause of action; and the only question remaining is, can a recovery be had upon the second count of the declaration?

It is unnecessary to settle whether, in case of assessments against the original insured, an action could be sustained upon an account annexed. In such a case, many matters have to be proved which are not in controversy here. But in this case, the defendant, for good consideration, promised to pay such assessments as should thereafter be made against the policy. Subsequent to that period, these assessments were duly made for losses incurred. There is no question raised by the case upon that point, and they are to be taken as assessments legally and properly made. After the assessments were thus made and the time for which the policy was issued had expired, there was nothing left for the defendant to do but to pay the money, and nothing for the plaintiffs but to receive it. A general count was, therefore, sufficient. The plaintiffs had held themselves ready, at all times, to pay for any losses, and they have done all that their contract required. It has been kept and performed, on their part, in full; and the time for which the insurance was effected having expired, there is nothing further left for them to do.

Upon such a state of facts a general count may be maintained. Where the terms of a contract have been fulfilled, and it has resulted in an obligation to pay money, so that there is nothing but a debt or duty to be paid or performed,

a general count may be maintained. *Hale* v. *Handy*, 6 Foster's Rep. 206 ; *Mitchell* v. *Gile*, 12 N. H. Rep. 390.

A general count of this kind is always to be sustained when it can be without violating the fixed and unbending rules of pleading. It is a bill of particulars—a specification of the plaintiffs' claim ; and at once gives the defendant full information of what is sought to be recovered against him.

The position taken in argument that the plaintiffs cannot recover upon the second count, since it is upon an account annexed for assessments upon the note which had been given up, cannot, for the reasons already stated, be sustained. The assessments were made before the note was given up. They were made against the policy, not against that note. That note was not the contract that bound them, but they entered into a new contract, by which they promised to pay all assessments that should be made against the policy. The old note was but mere data by which to make the assessments, and its subsequent surrender could not affect the liability of the defendant.

According to the provisions of the transfer, there must be

*Judgment on the verdict.*